CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
April 16, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| Trisura Specialty Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:24-cv-00002 |
| | ) | |
| Brian Omps Towing & Repair, LLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CSI Freight, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on Plaintiff Trisura Specialty Insurance Company's ("Trisura") motion for default judgment against Defendant CSI Freight, LLC ("CSI") (Dkt. 20). Trisura seeks a declaratory judgment that it has no duty to defend or indemnify CSI, whom it insures, in a state-court lawsuit brought by Brian Omps Towing & Repair, LLC ("Omps"). For the reasons outlined below, Trisura's motion for default judgment will be granted in part and denied in part.

## I.    Background

### A. Factual History

On May 22, 2022, a driver operating a tractor-trailer owned by CSI veered off the road and rolled over while exiting Interstate 81 in Warren County, Virginia. (Compl. ¶¶ 11–15 (Dkt. 1); Compl. Ex. 2 at 1–2 (Dkt. 1-3).) No other vehicles were involved in the accident,

and the driver was not injured.  (Compl. ¶ 16.)  The tractor-trailer was hauling sacks of flour at the time of the accident.  (*Id.* ¶ 11.)

The Virginia Department of Transportation ("VDOT") dispatched Omps to the accident scene pursuant to VDOT's Towing and Recovery Incentive Program.[1]  (*Id.* ¶ 17.)  After arriving, Omps cleaned up the scene and towed the tractor-trailer and its cargo to Omps's storage facility.  (*Id.* ¶ 21.)  Around May 31, 2022, Omps sent CSI an invoice for $42,840.00 for the services it reportedly performed in recovering and towing the truck.  (*Id.* ¶ 22; *see* Compl. Ex. 2 at 5.)

At the time of the May 22, 2022 accident, CSI held a commercial auto insurance policy issued by Trisura.  (Compl. ¶ 9; *see* Compl. Ex. 1 (Dkt. 1-2).)  Under the insurance contract's liability coverage agreement, Trisura agreed to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (Compl. ¶ 39; Compl. Ex. 1 at 43.)  The contract further states that Trisura "will also pay all sums an 'insured' legally must pay as a 'covered pollution cost or expense' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of covered 'autos.'"  (Compl. ¶ 40; Compl. Ex. 1 at 43.)  But it clarifies that Trisura must cover such costs only "if there is either 'bodily injury' or 'property damage' to which this insurance applies that is caused by the same 'accident.'"  (*Id.*)  Trisura has the "duty to defend any 'insured' against a 'suit' asking for such damages or a 'covered pollution cost or expense,'"

---

[1] The Towing and Recovery Incentive Program, or "TRIP," designates certain towing and recovery operators whom VDOT or the Virginia State Police may summon in the event of a tractor-trailer accident on certain segments of Interstate 81.  (*See* Compl. ¶ 18.)  Omps is one of the towing operators registered for the segment of Interstate 81 where the accident in this case occurred.  (*Id.* ¶ 19.)

but it has "no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' or a 'covered pollution cost or expense' to which th[e] insurance does not apply." (Compl. Ex. 1 at 44.)

CSI did not pay Omps for the invoiced costs. Omps demanded that CSI or Trisura pay the amount of $67,490.00 as of January 10, 2023, as well as continuing storage fees of $75 per unit per day. (Compl. ¶ 24.) On July 10, 2023, Trisura advised both CSI and Omps that it was declining insurance coverage for Omps's charges associated with the accident. (*Id.* ¶¶ 33–34.)

## B. Procedural History

On August 9, 2023, Omps filed a lawsuit against CSI in the Circuit Court for Frederick County, Virginia, seeking to recover the invoiced towing-and-recovery charges as well as accrued storage fees. (*Id.* ¶ 25; *see* Compl. Ex. 3 (Dkt. 1-4) [hereinafter "State Compl."].) Omps alleged that CSI owed it $98,390.00 as of August 9, 2023, and brought three causes of action against CSI. (State Compl. ¶ 17.) Count I sought to enforce a statutory lien on the tractor-trailer (which was still at Omps's storage facility) and petitioned to sell the vehicle pursuant to Virginia law. (*Id.* ¶¶ 19–30.) Count II asserted that CSI had a statutory obligation to reimburse Omps for the towing, recovery, and storage services it performed. (*Id.* ¶¶ 31–38.) Lastly, Count III alleged a claim for unjust enrichment. (*Id.* ¶¶ 39–45.) Omps's state-court complaint did not allege that any of its employees were injured or that any of its property was damaged as a result of the accident. (*See* Compl. ¶ 30.) Trisura agreed to withdraw its declination of insurance coverage and defend CSI in the state-court action while reserving "all its rights under the Insurance Contract, at law, and in equity." (*Id.* ¶ 36.)

On January 3, 2024, Trisura filed a complaint in this court seeking a declaratory judgment against CSI and Omps. (*See* Compl.) Trisura asks the court to declare that it has no duty to defend or indemnify CSI in connection with Omps's lawsuit. (*See id.* at 9; Dkt. 21 at 2.)

The Clerk issued a summons for CSI on January 9, 2024. (Dkt. 9-1.) According to records maintained by the Texas Secretary of State, CSI is a Texas limited liability company with its principal place of business in Houston, Texas. (Decl. of Kevin T. Streit ¶ 6 (Dkt. 12-1).) CSI has not registered to conduct business in Virginia and does not have a registered agent appointed for service of process in the Commonwealth. (*Id.* ¶ 7.) On January 10, 2024, Trisura submitted the summons and a copy of its complaint (including exhibits) to the Commissioner of the Virginia Department of Motor Vehicles ("DMV"), CSI's statutory agent under Va. Code § 8.01-308.[2] (*Id.* ¶ 8.) On January 24, 2024, the DMV sent the summons, complaint, and exhibits to CSI via certified mail. (Dkt. 11.) On January 26, 2024, the DMV filed an affidavit of compliance confirming that it had served CSI. (*Id.*)

CSI did not appear or timely respond to Trisura's complaint. On February 21, 2024, Trisura moved for a Clerk's entry of default against CSI and submitted an affidavit from counsel demonstrating that Trisura had properly served CSI. (Dkt. 12; *see* Decl. of Kevin T. Streit.) The Clerk entered a default against CSI later that same day. (Dkt. 13.)

Trisura voluntarily dismissed its claims against Omps with prejudice on April 5, 2024. (Dkt. 19.) On April 12, 2024, Trisura filed a motion for default judgment against CSI. (Dkt.

---

[2] Va. Code § 8.01-308 provides that a nonresident who operates a motor vehicle in Virginia consents to have the Commissioner of the DMV serve as "the attorney or statutory agent of [the] nonresident for the purpose of service of process in any action against him growing out of any accident or collision in which such nonresident, his agent, or his employee may be involved while operating motor vehicles" in Virginia. Va. Code Ann. § 8.01-308.

20.)  To date, CSI has not appeared in this action or filed any response to Trisura's complaint or motion for default judgment.

## II.    Jurisdiction Under the Declaratory Judgment Act

Before addressing the merits of Trisura's motion for default judgment, the court must determine whether it has subject matter jurisdiction over this declaratory judgment action, and, if so, whether it should exercise its discretionary jurisdiction under the Declaratory Judgment Act to resolve Trisura's request for declaratory relief.

### A.  Standard of Review

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction," a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  *Id.*

"[T]he Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts; it is 'procedural only.'"  *Vaden v. Discover Bank*, 556 U.S. 49, 70 n.19 (2009) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).  For a court to exercise subject matter jurisdiction in a declaratory judgment action, the complaint must allege "an 'actual controversy' between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment," and the court must have "an independent basis for jurisdiction over the parties (e.g., federal

question or diversity jurisdiction)." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotation marks omitted).

Even when a case satisfies the requirements for subject matter jurisdiction, the Declaratory Judgment Act gives federal courts "unique and substantial discretion" to determine whether to declare the rights of litigants. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995); *see Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. As a general rule, courts should exercise jurisdiction over declaratory judgment claims "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

When there is ongoing litigation in state court that might overlap with the federal suit seeking a declaratory judgment, the federal court also "must consider whether 'federalism, efficiency, and comity' counsel against exercising jurisdiction." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 202 (4th Cir. 2019) (citing *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004)). To make that determination, courts "often look to (1) the state's interest in having its own courts decide the issue; (2) the state courts' ability to resolve the issues more efficiently than the federal courts; (3) the potential for unnecessary entanglement between the state and federal courts based on overlapping issues of fact or law; and (4) whether the federal action is

mere forum-shopping." *Id.* (quoting *Coffey*, 368 F.3d at 412); *see Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994), *abrogated in part on other grounds by Wilton*, 515 U.S. 277. The court "should not treat [these] factors as a 'mechanical checklist,' but rather should apply them flexibly in light of the particular circumstances of each case." *VRCompliance LLC v. HomeAway, Inc.*, 715 F.3d 570, 573 (4th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

## B. Analysis

To begin, Trisura has alleged facts that satisfy the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a), so the court has an "independent basis for jurisdiction over the parties." *Volvo*, 386 F.3d at 592. The amount in controversy exceeds $75,000, (*see* Compl. ¶ 28), and the parties have diverse citizenship. Trisura is a citizen of Oklahoma, CSI is a citizen of Texas, and Omps (which has been dismissed as a party) is a citizen of Virginia. (*Id.* ¶¶ 3–5.)

The court next must consider whether an "actual controversy" exists between the parties, as required for the court to exercise Article III jurisdiction. *See Haworth*, 300 U.S. at 239–40 ("The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy' . . . is operative only in respect to controversies which are such in the constitutional sense."). The Fourth Circuit has strongly suggested that the ripeness doctrine prohibits courts from issuing a declaratory judgment addressing an insurer's duty to indemnify an insured in a state-court action when that action is still pending. *Trustgard*, 942 F.3d at 201. In *Trustgard*, it explained that the insurer's "alleged injury—that it might have to guarantee a future judgment against [the insured]—is of a hypothetical and contingent nature: the injury

may or may not occur depending on the outcome of the state lawsuit." *Id.* at 200. If the insured does not win a judgment in state court, the insured's "obligation to guarantee such a judgment will have no effect." *Id.*

Importantly, the Fourth Circuit in *Trustgard* distinguished duty-to-indemnify suits, which are "ordinarily . . . advisory when the insured's liability remains undetermined," from duty-to-defend suits, which "address[] who [is] required to pay the costs of defending a suit prior to judgment." *Id.* There is no ripeness problem with addressing an insurer's duty to defend while the underlying state-court action remains pending. "[O]nce a state court case is filed and an insured claims a defense," the duty to defend "becomes a concrete question, ripe for resolution." *Liberty Mut. Fire Ins. Co. v. Sutton*, No. 21-1277, 2022 WL 11112589, at *5 (4th Cir. Oct. 19, 2022). Here, because Trisura brought this declaratory action after Omps filed its state-court complaint and has defended CSI in that litigation under a reservation of rights, the duty-to-defend question is ripe for resolution.

Trisura's claim concerning its duty to indemnify CSI presents a more difficult question. In *Trustgard*, the declaration the insurer sought was limited to its duty to indemnify—the insurer's duty to defend was not at issue. *See Trustgard*, 942 F.3d at 200. But in a more recent unpublished decision, the Fourth Circuit addressed a scenario where, as here, an insurer sought a declaratory judgment addressing both its duty to defend *and* its duty to indemnify. *Sutton*, 2022 WL 11112589, at *5. The court explained that a duty-to-indemnify claim "ripens along with [a] duty-to-defend claim" when, under the applicable state law, a finding that the insured had no duty to defend necessarily means that the insured had no duty to indemnify. *Id.* That is true under North Carolina law, which applied in *Sutton*, so the court held that the insurer's

duty-to-indemnify claim ripened alongside its duty-to-defend claim. *See id.*; *see also Smallwood v. Builders Mut. Ins. Co.*, No. 3:23cv67, 2024 WL 844868, at *7 (E.D. Va. Feb. 28, 2024) (applying *Sutton* to hold that a duty-to-indemnify claim ripened along with a duty-to-defend claim because, "under Virginia law, if there is no duty to defend, there can be no duty to indemnify").

Trisura's claims are distinguishable from those in *Sutton* and *Smallwood*. Trisura's obligations under its insurance contract with CSI are governed by Texas law.[3] Texas law recognizes that the duty to defend and the duty to indemnify are "distinct and separate duties." *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex. 1997). The duty to defend generally is broader than the duty to indemnify, as an insurer has a duty to defend when the allegations in a complaint potentially support insurance coverage. *Liberty Mutual Ins. Co. v. Copart of Conn., Inc.*, 75 F.4th 522, 535 (5th Cir. 2023). Critically, though, the Supreme Court of Texas has held that the duty to indemnify may apply even when the insurer had no duty to defend. *See Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 254 (5th Cir. 2011) (citing *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 741, 744 (Tex. 2009)). That is the case because the "facts actually established in the underlying suit control the duty to indemnify," whereas the duty to defend is established by "considering only the factual allegations in the pleadings and the terms of the [insurance] policy." *D.R. Horton-Texas, Ltd.*, 300 S.W.3d at 744 (quoting *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650,

---

[3] Because this case arises under the court's diversity jurisdiction, the court applies the choice-of-law rules of Virginia, the forum state. *See CACI Int'l, Inc. v. St. Paul Fire & Mar. Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Under Virginia's choice-of-law rules, "the law of the place where an insurance contract is written and delivered controls issues as to its coverage." *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993). Here, the insurance contract was delivered to CSI's office in Texas, (*see* Dkt. 1-2 at 1), so Texas law governs the interpretation of the contract. *See, e.g.*, *CACI Int'l*, 566 F.3d at 154–55 (applying Virginia choice-of-law rules to hold that Virginia substantive law governed the construction of an insurance contract because the insurer "delivered the policies to [the insured] in Virginia").

656 (Tex. 2009)); *see also Peachtree Constr.*, 647 F.3d at 253 (stating that the duty to indemnify "generally cannot be ascertained until the completion of litigation, when liability is established, if at all") (citing *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)). Because Texas law does not necessarily condition the duty to indemnify on the duty to defend, the fact that Trisura's duty-to-defend claim is ripe for review does not mean that its duty-to-indemnify claim has similarly ripened.[4]

Ultimately, the court need not decide whether it could exercise Article III jurisdiction over Trisura's duty-to-indemnify claim. In *Trustgard*, the Fourth Circuit made clear that courts, in declaratory judgment actions, may address the "discretionary jurisdictional question before [the] nondiscretionary jurisdictional question." 942 F.3d at 201. It also emphasized that "courts should exercise their discretionary jurisdiction with caution when doing so would raise serious questions about Article III jurisdiction." *Id.* at 202 (citing *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)).

Trisura's duty-to-indemnify claim presents similar Article III questions, and this court declines to exercise its discretionary jurisdiction over the claim. Even if Omps's state-court complaint does not support a finding that Trisura has a duty to defend CSI, it is "conceivable" that the evidence introduced in the state case could establish that Trisura has a duty to

---

[4] In a recent published decision, the Fourth Circuit held in a footnote that an insurer could seek a declaratory judgment "concerning its duty to defend *as well as* its duty to indemnify" while the underlying state-court lawsuit was ongoing, without considering the relationship between the two duties under the applicable state law. *Med. Mut. Ins. Co. of N.C. v. Gnik*, 93 F.4th 192, 199–200 & n.5 (4th Cir. 2024) (emphasis added). But the insurance policy in *Gnik* was governed by Virginia law, and Virginia law recognizes that the lack of a duty to defend precludes any duty to indemnify. *See Smallwood*, 2024 WL 844868, at *7 (citing *VEPCO v. Northbrook Prop. & Cas. Ins. Co.*, 475 S.E.2d 264, 265 (Va. 1996)). The Fourth Circuit did not suggest that a duty-to-indemnify claim *always* ripens alongside a duty-to-indemnify claim.

indemnify CSI.[5]  *D.R. Horton-Texas, Ltd.*, 300 S.W.3d at 745.  Based on Trisura's pleadings and

other filings in this case, it appears that Omps's state-court lawsuit against CSI is still pending,

so this court "risks issuing an advisory opinion if it opines on [Trisura's] coverage obligations"

at this time.  *Golladay v. Nationwide Prop. & Cas. Ins. Co.*, No. 5:22-cv-00030, 2023 WL 1448058,

at *3 (W.D. Va. Feb. 1, 2023) (declining to exercise discretionary jurisdiction over an insurer's

claim seeking a declaratory judgment on its coverage obligations based on concerns about the

court's Article III jurisdiction to hear the claim when the state action remained pending); *see*

*also Green v. Hudson Ins. Co.*, No. 5:20-cv-00052, 2021 WL 279609, at *2–3 (W.D. Va. Jan. 27,

2021) (same).

By contrast, the evidence introduced in the state case could affect Trisura's duty to

indemnify, "letting the state first resolve ambiguities in the record" also will allow this court

"to make a more informed decision than [it] could do otherwise.  *Trustgard*, 942 F.3d at 202.

The state court can oversee this factual development "more efficiently than federal courts."

*Coffey*, 368 F.3d at 412; *see Goodville Mut. Cas. Co. v. Doby*, No. 2:19-cv-607, 2020 WL 2602203,

at *1–2 (E.D. Va. May 21, 2020).  For these reasons, the court will decline to exercise

discretionary jurisdiction over the duty-to-indemnify question at this time.[6]

By contrast, the court will proceed to resolve Trisura's request for a declaration

regarding its duty to defend as the relevant factors weigh in favor of addressing this question

---

[5] For example, Omps's state-court complaint does not allege that it suffered any covered "property damage" when responding to the May 22, 2022 accident, but it is possible that further factual development could show Omps sustained damage that could qualify for liability coverage under Trisura and CSI's insurance contract.

[6] Trisura may re-file a motion for default judgment on the duty-to-indemnify issue once the state-court litigation has been resolved.

now.  *See Doby*, 2020 WL 2602203, at *2–4 (declining to exercise discretionary jurisdiction over duty-to-indemnify claim but exercising jurisdiction over duty-to-defend claim).

Starting with the first factor, Virginia does not have an especially strong "interest in having its own courts decide the issue." *Coffey*, 368 F.3d at 412.  Trisura is defending CSI in the state lawsuit under a reservation of rights, but there is no indication it has asked the state court to resolve its duty to defend.  To determine whether Trisura has a duty to defend CSI, the court must compare Omps's allegations in its state-court complaint against the terms of Trisura's insurance contract with CSI.  *See D.R. Horton-Texas, Ltd.*, 300 S.W.3d at 744.  That analysis is entirely separate from the issues pending before the state court, which concern CSI's obligation to pay Omps for the towing, recovery, and storage services it provided.  *See Coffey*, 368 F.3d at 414 (discounting the state's interests in resolving a duty-to-defend claim because "the contractual coverage issue [would] not be decided by the state tort case, and [the insurer was] not a party to the state case"); *Doby*, 2020 WL 2602203, at *3 (same).  The fact that Texas law governs the insurance contract further demonstrates that Virginia courts do not have a particularly strong interest in resolving this issue.  That fact is also relevant to the second factor, as a Virginia court is not necessarily positioned to resolve issues of Texas law "more efficiently than the federal courts." *Coffey*, 368 F.3d at 412.

As to the third factor, addressing Trisura's duty to defend creates little risk of "unnecessary entanglement between the state and federal courts based on overlapping issues of fact and law." *Id.*  Under Texas law, this court need not consider any facts beyond those alleged in Omps's complaint to rule on Trisura's duty to defend.  *See D.R. Horton-Texas, Ltd.*, 300 S.W.3d at 744.  That analysis does not create the risk of any entanglement with the

proceedings in state court. *See Coffey*, 368 F.3d at 413 (holding that this factor did not weigh against addressing duty-to-defend claim because, under the applicable state law, "the duty-to-defend question [did] not require the district court to resolve factual questions at all").

Finally, there is no reason to believe Trisura is forum shopping or attempting a "procedural fencing" strategy in this case. *Id.* at 412; *Nautilus*, 15 F.3d at 376–77. The record does not suggest that Trisura has sought to intervene in the state case to litigate its contractual duties to CSI. Trisura's claim seeking a declaration on its duty to defend "is separate and independent from the state court action." *Doby*, 2020 WL 2602203, at *4.

In sum, after weighing the relevant factors, the court concludes that a declaratory judgment resolving Trisura's duty to defend CSI "would clarify and settle the legal relations in issue and would terminate and afford relief from the coverage controversy." *Coffey*, 368 F.3d at 414 (cleaned up); *see United Cap. Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998). The court therefore will proceed to the merits of Trisura's claim for declaratory relief, limited to the duty-to-defend question.

### III.    Motion for Default Judgment

#### A. Standard of Review

Rule 55 of the Federal Rules of Civil Procedure governs the entry of defaults and default judgments. It provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). In cases like this one, where a plaintiff does not seek liquidated damages, the plaintiff then "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . and is barred from contesting . . . the facts thus established." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation— other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). A default does not constitute an admission of liability, and a defendant in default is not deemed to have admitted the plaintiff's conclusions of law. *See Ryan*, 253 F.3d at 780. Rather, the court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought." *Id.*

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). However, "the entry of default judgment is committed to the discretion of the trial court." *Hummel v. Hall*, 868 F. Supp. 2d 543, 548 (W.D. Va. 2012) (citing *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)). When reviewing motions for default judgment, courts consider several factors, including:

> (1) whether there is a large amount of money involved in the litigation; (2) whether there are material issues of fact in the case needing resolution; (3) whether the case involves issues of great public importance; (4) whether the grounds for the motion for a default judgment are highly technical; (5) whether the party asking for a default judgment has been prejudiced by the non-moving party's actions or omissions; (6) whether the actions or omissions giving rise to the motion for a default judgment are the result of a good-faith mistake on the part of the non-moving party; (7) whether the actions or omissions giving rise to the motion for a default judgment are the result of excusable neglect on the part of the non-moving party; and (8) whether the grounds offered for the entry of a default judgment are clearly established.

*Id.* (citation omitted); *see* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2685 (4th ed. 2024).

**B. Analysis**

The court concludes that Trisura is entitled to default judgment declaring that it had no duty to defend CSI in Omps's lawsuit. Based on the uncontested record, the insurance contract does not require Trisura to defend CSI in the lawsuit. And the relevant factors support a default judgment award in this case. The following sections address these issues in turn.

1.  Applicable principles of contract law

As noted above, Texas law governs the interpretation of Trisura's contractual duties to CSI. *See supra* note 3. Under Texas law, "[i]nsurance policies are interpreted under the rules of construction that apply to contracts in general." *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 198 (Tex. 2022). "The primary goal of contract construction is to effectuate the parties' intent as expressed in the contract." *Id.* at 198–99. When determining the scope of insurance coverage, courts "examine the policy as a whole to ascertain the true intent of the parties." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004). When an insurance contract's "language is plain and unambiguous, courts must enforce the contract as made by the parties." *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 753 (Tex. 2006). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Contractual language is ambiguous if it "is subject to two or more reasonable interpretations."

- 15 -

*Id.* "If a contract is truly ambiguous, then Texas law requires a court to adopt 'the construction most favorable to the insured.'" *Companion Prop. & Cas. Ins. Co. v. Opheim*, 92 F. Supp. 3d 539, 547 (N.D. Tex. 2015) (quoting *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 701 (Tex. 1993)).

Under Texas law, the duty to defend refers to "an insurer's obligation to provide a legal defense in 'any lawsuit brought against the insured that alleges and seeks damages for an event potentially covered by the policy, even if groundless, false or fraudulent.'" *BITCO Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329 (5th Cir. 2022) (quoting *D.R. Horton-Texas, Ltd.*, 300 S.W.3d at 743). "It is triggered at the outset of the policyholder's underlying litigation." *Id.*

The Supreme Court of Texas applies the "eight-corners rule" to determine whether an insurer has a duty to defend. The rule "directs Texas courts to determine an insurer's duty to defend its insured based on (1) the pleadings against the insured and (2) the terms of the insurance policy." *Monroe Guar. Ins. Co.*, 640 S.W.3d at 199. Generally, "the insurer's duty to defend is determined by comparing the allegations in the plaintiff's petition to the policy provisions, without regard to the truth or falsity of those allegations and without reference to facts otherwise known or ultimately proven." *Id.* The insured "has the initial burden of establishing that the underlying claims potentially state a cause of action covered by the policy." *BITCO*, 31 F.4th at 329 (citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010)).

2.  <u>Trisura has no contractual duty to defend CSI in Omps's state-court lawsuit.</u>

Applying the eight-corners rule, this court compares the insurance contract's terms with Omps's allegations in the state-court complaint to determine whether Trisura has a duty to defend CSI in that case. *See Monroe Guar. Ins. Co.*, 640 S.W.3d at 199. Trisura argues it has no duty to defend CSI because Omps does not allege that the May 22, 2022 accident caused it any "bodily injury" or "property damage," as those terms are defined in the contract. (Dkt. 21 at 2.) The court agrees.

Under the terms of the insurance contract, Trisura has a duty to defend CSI only against suits alleging covered damages from "bodily injury" or "property damage" or a "covered pollution cost or expense." (Compl. Ex. 1 at 43–44.) The contract defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person including death resulting from any of these." (*Id.* at 53.) It defines "property damage" as "damage to or loss of use of tangible property." (*Id.* at 55.) Trisura must reimburse a "covered pollution cost or expense" caused by an accident only "if there is either 'bodily injury' or 'property damage' to which this insurance applies that is caused by the same 'accident.'" (*Id.* at 43.) Thus, Trisura has a duty to defend CSI in the state lawsuit only if Omps has alleged that it potentially incurred "bodily injury" or "property damage" as a result of the May 22, 2022 accident. (*See* Compl. ¶ 47); *BITCO*, 31 F.4th at 329.

Omps's state-court complaint does not contain any such allegations. It does not suggest that any Omps employees sustained any bodily injury when they recovered, towed, and stored CSI's tractor-trailer. Nor does it claim that Omps suffered any property damage when they recovered the tractor-trailer. Omps only claims that it incurred costs from

- 17 -

providing those services, (*see* State Compl. ¶ 36), and does not assert or imply that it suffered any "damage to or loss of use of tangible property" in connection with them.[7]

Instead, Omps brought the state-court action to recover the amount CSI owed for the services Omps performed. The causes of action Omps alleges—particularly its unjust enrichment claim—are most analogous to breach-of-contract claims. *See, e.g.*, *James G. Davis Constr. Corp. v. FTJ, Inc.*, 841 S.E.2d 642, 647 (Va. 2020) (explaining that "[t]he doctrine of unjust enrichment effects a 'contract implied in law'"). Courts applying Texas law have held that monetary damages a third party suffers as a result of the insured's breach of contract with that third party "represent[] neither physical injury to tangible property nor loss of use of tangible property," but rather "constitute[] purely economic loss." *Gibson & Assocs. v. Home Ins. Co.*, 966 F. Supp. 468, 473–74 (N.D. Tex. 1997). And Texas law "does not recognize economic damages as coming within the definition of 'property damages' contained in standard liability insurance policies." *Id.* (citing *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 737 (Tex. App. 1996) (collecting cases)). Because Omps's complaint alleges only economic loss it suffered, it does not trigger Trisura's contractual duty to defend CSI in suits alleging "property damage," which requires "damage to or loss of use of tangible property." (Compl. Ex. 1 at 55.)

---

[7] While the lack of alleged bodily injury or property damage precludes coverage, Omps's state-court complaint also does not allege any "covered pollution cost or expense." The insurance contract defines that term, in relevant part, as "any cost or expense arising out of . . . [a]ny request, demand, order or statutory or regulatory requirement that any 'insured' or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, 'pollutants.'" (Compl. Ex. 1 at 53.) "Pollutants" are defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." (*Id.* at 55.) Even assuming that the flour CSI's tractor-trailer was carrying could qualify as a "pollutant," Omps's complaint does not assert that any flour—or any other substance—escaped from the trailer as a result of the accident.

Thus, under the unambiguous terms of the insurance contract, Trisura has no duty to defend CSI against the allegations in Omps's complaint seeking recovery for economic damage it suffered.

3.  <u>The relevant factors support granting a default judgment in this case.</u>

As mentioned above, courts in this district have considered several factors when deciding whether to grant a motion for default judgment. *See Hummel*, 868 F. Supp. 2d at 548. On balance, those factors support a default judgment here.

For one, the nature of Trisura's declaratory action weighs in favor of a default judgment. Resolving Trisura's duty to defend is a straightforward matter. Texas law instructs the court to look only to Omps's allegations and the underlying insurance contract to answer this question—there are no "material issues of fact" the court must analyze before reaching a judgment. *Id.* In addition, this is not a case where the court must resolve "highly technical" issues to resolve a motion for default judgment. *Id.* While Omps seeks to recover a substantial monetary award from CSI, the question of Trisura's duty to defend CSI is a routine dispute about insurance coverage that does not implicate "issues of great public importance." *Id.*

CSI's unresponsiveness in this case further supports a default judgment award. CSI was served via certified mail around January 24, 2024. (*See* Dkt. 11.) Trisura moved for default judgment on April 12, 2024, after CSI failed to make an appearance or respond to Trisura's complaint. Nearly a full year has passed since Trisura filed that motion, and CSI still has not even appeared in this case. Given the significant amount of time that has elapsed since Trisura served CSI, it is difficult to classify CSI's unresponsiveness as "the result of excusable neglect" or a "good-faith mistake." *Hummel*, 868 F. Supp. 2d at 548. Regardless, courts have recognized

that default judgment is warranted where, as here, the defendant "has completely failed to participate in th[e] litigation in any meaningful way." *Tweedy v. RCAM Title Loans, LLC*, 611 F. Supp. 2d 603, 606 (W.D. Va. 2009); *see also Riddick v. Kiser*, No. 7:20-cv-00081, 2021 WL 2099573, at *2 (W.D. Va. May 25, 2021) ("[D]efault judgment is appropriate when the adversary process has been halted because of an essentially unresponsive party.") (citation omitted); *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (holding that default judgment was warranted where the "[d]efendant [was] unresponsive for more than a year"). Finally, CSI's failure to participate in this case has prejudiced Trisura by delaying a ruling on Trisura's duty to defend.

*    *    *

Because Trisura has no contractual obligation to defend CSI in the state lawsuit and a default judgment is warranted under the circumstances of this case, the court will grant Trisura default judgment on this issue.

## IV.    Conclusion

For the reasons stated above, Trisura's motion for default judgment (Dkt. 20) will be **GRANTED** in part and **DENIED** in part. The court declines to exercise its discretionary jurisdiction to issue a declaratory judgment on Trisura's duty to indemnify CSI and therefore will **DENY** Trisura's motion for default judgment on that question. The court will **GRANT** Trisura's motion for default judgment as to its duty to defend CSI in Omps's state-court action.

An appropriate Order will issue.

ENTERED this  16th  day of April, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE